**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Don Medicine Wolf,<br><br>    Plaintiff,<br><br>vs.<br><br>Ambaya Pilar Martin, et al.,<br><br>    Defendants. | No. CV10-8163 PCT DGC<br><br>**ORDER DENYING**<br>**PRELIMINARY INJUNCTION** |

The Court held a preliminary injunction hearing on October 7, 2010. Plaintiff presented four witnesses and Defendants presented one. The parties also submitted exhibits and made oral arguments. For reasons that follow, the Court will deny Plaintiff's request for a preliminary injunction. Doc. 3.

Plaintiff's basic assertions are that he created – over the course of 40 years – the dietary supplement formulas used in Defendants' business and that Defendants are seeking to cheat him out of the formulas and profits earned from the formulas. Plaintiff contends that he entered into a de facto partnership with Defendant Ambaya Martin and that she abused and mistreated him through much of their relationship. Defendants' principal objective during the preliminary injunction hearing was to discredit Plaintiff. After listening to the evidence and considering the exhibits, the Court finds credibility problems on both sides of this case.

Plaintiff's testimony at the hearing appeared evasive and lacking in candor. Plaintiff admitted that he has gone by the name Larry Dearborn, but stated that this is his adopted name from his adoptive parents; his true native American name is Dawn Medicine Wolf.

1  Plaintiff denied that he has used other aliases, but an affidavit from Edward Harris, an
2  investigator from the Food and Drug Administration ("FDA"), states that Plaintiff has used
3  the names Dr. Fran Anthony, Francis St. Germaine, Ron St. Germaine, Rusty St. Germaine,
4  and Rusty Barnet while trafficking in misbranded, smuggled, or unapproved drugs. *See*
5  Hearing Ex. 6 at 4.

6  Plaintiff testified that he attended medical school at Cornell University, attended
7  veterinary school at Cornell University, received a Ph.D. in biophysics from Hanover
8  University in Germany, and studied science in Russia. Plaintiff testified that his formulas
9  are based on Russian secrets known only to few. Plaintiff denied that he has ever held
10 himself out as a medical doctor, but later equivocated on this testimony. Plaintiff testified
11 that he has practiced medicine in Mexico and Canada.

12 Plaintiff testified that he was unable to recall the details of a criminal prosecution
13 against him in the United States District Court for the District of Nevada, but exhibits
14 admitted into evidence show that Defendant pled guilty to 16 federal felony counts, including
15 false declaration before a court, on July 2, 1993. *See* Hearing Ex. 4, Criminal Docket at 11-
16 12. Plaintiff was sentenced to 24 months in the Bureau of Prisons, with credit for time
17 served, on September 29, 1993. *Id*.

18 The Court also found Plaintiff's other principal witnesses to be lacking in credibility.
19 Dr. Horowitz, who testified by telephone from Hawaii, repeatedly emphasized his
20 international fame. When asked whether Plaintiff's prior criminal convictions for
21 introducing unapproved drugs into interstate commerce would concern him, Dr. Horowitz
22 stated that he would "applaud" Plaintiff's convictions because Plaintiff overstepped the
23 authority of the FDA and regulatory agencies. Plaintiff's witness Sabrina Barnett was more
24 advocate than witness, arguing with defense counsel and seeking to provide testimony that
25 was not called for by questions. She testified that she knew Plaintiff was truthful and
26 Defendant Ambaya Martin was untruthful on the basis of one interview.

27 The Court also has credibility concerns about Defendants' case. Defendant Ambaya
28 Martin testified at the TRO hearing that she and Plaintiff Medicine Wolf developed her

1  company's products together – that he brought dietary and herbal expertise to the business
2  and she provided funding and organization.  Ms. Martin testified at the TRO hearing that the
3  products were developed while she and Plaintiff Medicine Wolf  worked side-by-side over
4  the course of 10 months in 2007.  The products they developed initially were marketed using
5  Medicine Wolf's name, and Ms. Martin, after the split with Plaintiff, applied for a trademark
6  on that name.  Doc. 4-1, Ex. I.  Given this evidence, Defendants' claim that Plaintiff has no
7  interest in the products or their profits seems suspect.

8    Notwithstanding the difficulty the Court has with the credibility of each side's case,
9  the burden of proof at this preliminary injunction stage is on Plaintiff.  Given the credibility
10 problems with Plaintiff's case, the Court concludes that Plaintiff has not shown a probability
11 of success on the merits.  Nor has Plaintiff shown that the balance of hardships tips sharply
12 in his favor.  As a result, preliminary injunctive relied is not warranted.  *See Alliance for Wild*
13 *Rockies v. Cottrell*, ___ F.3d ___, 210 WL3665149, at *5-8 (9th Cir. Sept. 22, 2010) (to
14 obtain a preliminary injunction, a plaintiff must either show that he is likely to succeed on
15 the merits or that he has raised serious questions and the balance of equities tips sharply in
16 his favor).

17   This is not the only reason for denying injunctive relief.  At the TRO hearing, Plaintiff
18 asked the Court to enjoin Defendants from using Medicine Wolf's formulas and products.
19 Plaintiff argued that he owns the formulas, that they constitute trade secrets, that Defendants
20 have misappropriated the trade secrets, that Defendants' improper formulations of the
21 products threaten his reputation and the public health, and that the Court therefore should
22 enjoin Defendants from continuing to produce and sell his products.  At the close of the
23 preliminary injunction hearing, however, Plaintiff dropped his demand that Defendants stop
24 using his formulas.  Instead, Plaintiff asked the Court to require Defendants to produce an
25 ongoing accounting "so that when it's determined that Don Wolf is entitled to half of the
26 profit or 25 percent of the profit or whatever from the sale of the products he devised, we will
27 have a means of establishing that."  Court's LiveNote Transcript, 10-7-10.  This is not a
28 proper request for equitable relief.  The Federal Rules of Civil Procedure provide ample tools

- 3 -

for Plaintiff to conduct discovery and present evidence of profits to which he is entitled. Plaintiff has made no showing that he will suffer irreparable harm in the absence of such an ongoing accounting. *See Alliance for Wild Rockies*, 210 WL3665149 at *5-8 (likelihood of irreparable harm is a requirement for injunctive relief).

Plaintiff also asked the Court to require Defendants to designate the products in which Plaintiff allegedly has an interest as either "conforming" or "non-conforming." Doc. 28-1. If Defendants designate a product as non-conforming, Plaintiff asks that Defendants be required to disclaim any affiliation with Medicine Wolf on the product's label, but does not ask that any change be made to the product's formulation or that Defendants be prohibited from using Plaintiff's alleged formulas. If a product is designated as conforming, Plaintiff asks for the right to conduct regular inspections of samples or the product as well as Defendants' manufacturing methods and logs. The Court will deny this requested relief because, as discussed above, Plaintiff has not met his burden of showing that he is likely to succeed on the merits of his claim that the products are made with his formulas, nor that the balance of hardships tips sharply in his favor.

**IT IS ORDERED:**

1. Plaintiff's motion for a preliminary injunction (Doc. 3) is **denied**.
2. The Court will schedule a case management conference by separate order.

DATED this 12th day of October, 2010.

David G. Campbell
United States District Judge